May it please the court, Mr. Trinder, I'm Steve Fee, we're here to report a case of misdemeanor. We're here on behalf of the appellates in this case, Daniel and Lynn Nordstrom. We are appealing the jury verdict in favor of the defendant, Dr. Virdi, as well as the denial of our post-trial motion for a new trial in this case where the court erred as a matter of law in denying us the right to proceed with the missing witness instruction under 5.01 and the missing evidence instruction under 5.501 and also erred in allowing Dr. Virdi to render opinions on his custom and practice as to what he informs patients in an informed consent situation without disclosing those opinions under Supreme Court Rule 213F as required under that rule. We also ask that the court reverse with respect to the failure to allow the trial court to allow opinions from both subsequent treating physicians and our medical expert, Dr. Jane Weiss, concerning whether this was an appropriate treatment to be rendered, namely this LASIK procedure for a very far-sighted patient, and whether the patient in that situation has to be informed of the specific risk relative to his or her specific measurements and how that relates to the standard of care applicable to a reasonable ophthalmologist practicing in this area. In this case, this was tried as an informed consent case without an informed consent form signed by the plaintiff in evidence. And in this case, it is undisputed that Mr. Nordstrom denies ever having received an informed consent form or having even seen an informed consent form before going into this surgery. Dr. Virdi, the appellee in this case, has admitted it's a breach of the standard of care for a reasonable ophthalmologist to fail to obtain an informed, signed informed consent form prior to undergoing this procedure. But the defense has always been, in this case, there was a signed informed consent form, but we have no explanation why it's missing, but we know that it's our custom and practice to go forward with this surgery. If we go forward with this surgery, that signed informed consent form must be present. And that's the importance of why the 501 missing witness and missing evidence instructions are imperative in this case. She's asking, but did you submit those instructions? I did. I submitted them to the court. Not the 501 missing evidence one, because that came up in jury deliberations. But I did submit to the court the missing witness instruction for Patrick Core, who was their surgical technician, who was the person responsible for securing from the patient the informed consent form before the surgery proceeded, was responsible for on their interoperative reports, checking two boxes, one for the right eye and one for the left eye, that the informed consent form was present within the surgical area, and then was responsible after the surgery for taking the patient file and doing what was called a reconciliation and making sure all the forms, including the informed consent form, was present. The defense in this case claims that, number one... Let's go to the missing evidence instruction that Justice Schmidt asked about. That wasn't tendered during the conference on jury deliberations. No, it wasn't, because... And the record that we've been providing on appeal does not include a transcript of the discussion between Judge Blackwood and counsel following receiving the juror's question. Because there was no transcript. This was done by a telephone call. So how do we know that you tendered that missing evidence instruction? Because I related... Based on this record. In my post-trial motion, I related to the court that in that conversation I was offering to tender a 501 evidence instruction, which I do not think is in dispute with defense counsel in this case. The judge just again said, I'm not going to give that type of instruction to this jury. Well, but isn't the law that... I mean, you can't just offer to tender. You've got to tender it and have the court refuse it before you can raise that on appeal. Well, the problem, Your Honor, was that the way that this occurred was we received a telephone call from Judge Blackwood at 520 while the jury was deliberating, asking to see the unsigned informed consent form. And I objected to that and said, wait a minute. If they're asking to see a consent form, that makes the document that was under the control of the defendant in this case something that should have been controlled by them appropriate for a missing evidence instruction. Well, I understand, but then couldn't you have told your secretary or somebody, you know, fetch me up a missing evidence instruction and run it over to the courthouse and said, Judge, I'm tendering this. I tended it during the phone call saying that the informed consent form would be that there was no signed consent form. And Judge Blackwood ruled right there, no, I'm not going to do that. I don't see how going through the exercise then of doing it later after he's already ruled that I'm not going to be able to do it is going to change the record on that ruling. And your question was, could we please get a copy of the consent form? They're not asking, you don't know whether they want a blank form or a signed form. Right. It's just, could we get a copy of the consent form? Correct. And at that point, I asked for the missing evidence instruction because it's clear in this case that the consent form was under the control of the defense, namely, Ms. Eger, the person who does the LASIK coordination for the patients before they get into the hospital, testified in the case that she saw Dan Nordstrom sign this. So therefore, according to the defense, it had to be within the Verde Eye Clinic at that time. Judge Blackwood answered the question at 520, you must decide the case based on the evidence that was admitted at trial. No consent form was admitted during the trial. Did you object to that answer being given to the jury? I objected to the fact that he wasn't instructing on the 501, but I didn't object to that question, no. But the way he answered it, no. But the bigger issue in this case is really the failure of the defense to call Balpreet Kaur, who was the custodian of this consent form. If they had called her, wouldn't her testimony have been cumulative of the inquiries you made of Dr. Verde? No. She pointed out that that form was blank, that the consent form was not present prior to or after surgery. So what would her testimony have added that he didn't already testify to? Well, her testimony, according to Ms. Eger, if you look in the record, Ms. Eger testified in her discovery deposition that I'm not the person responsible for collecting that after the patient goes into the surgery suite, that Balpreet Kaur is the person responsible for that, and that Balpreet Kaur is a very thorough technician, and that if she had not had that consent form at the time this surgery had occurred, this surgery would not have occurred, period. It's our custom and practice that nobody gets in there without a signed informed consent form. Eger also testified that it was signed in her presence. Yes. She testified it was her responsibility to get the signature, and she got it. It's sort of like a chain of custody issue here. You know, you start first with Ms. Eger, and then the patient is taken back in the surgical area, readied, and then is transferred to the control of Ms. Kerr, who makes sure, quote, unquote, that everything is checked off. So what would Kerr have added that Verde didn't establish? Well, Verde doesn't know. Dr. Verde doesn't know why there wasn't an informed consent form in this case. He has no explanation for it. The person who has the only explanation that can be made in this case as to whether it existed or not at the time of the surgery is Balpreet Kaur. She's the sole person who can lay the foundation for that, because Ms. Eger doesn't know it, and Dr. Verde doesn't know it. She testified that she was there when it was signed. But she doesn't testify that it was present at the time the surgery was done. It was done moments before the surgery according to Eger's testimony, or am I misunderstanding her? Well, it could be. I mean, she doesn't know when the surgery occurred. She's just saying I get him to sign it. I saw him sign it. My client's saying I didn't ever receive one, and Ms. Kerr is the person responsible for determining that. I mean, when a witness is under the control of a party and could have been produced by exercise of reasonable diligence, they're not equal availability to the adverse party because she's an employee of the Verde Eye Clinic, and the Sullivan case set, or the Simmons v. U of I Chicago Hospitals and Clinics Supreme Court case says that hospital employees who have relevant information to the issue at trial are under the control of the adverse party then. And in this situation, the only relevant evidence to be determined was whether there was an existing signed informed consent form at the time of this surgery. And we say there wasn't. They say there was. And the only person who can prove that for the Verde Eye Clinic is Ms. Kerr. And that's not cumulative in this situation because they cannot reasonably produce why it isn't in the file, even though Ms. Egers says this is what Ms. Kerr does all the time. This is their practice. And is it, use the generic here, is it medical malpractice to lose a signed informed consent form? Or is it medical malpractice to do the surgery without having the informed consent? It's medical malpractice to do it without the informed consent. Now, nobody came in and testified that we lost it. Nobody said that. They just had no reasonable explanation as to what happened to it. So how we are prejudiced, Your Honor, in this case is this is the material issue of the fact. And for me to be denied it in closing argument, to be able to say you can assume that Bower Creek Court, if called to testify at a trial, would say I never saw an informed consent form. I told Dr. Verde and Ms. Eger there is no signed informed consent form. After telling them they still didn't get a signed informed consent form. And when I reconciled this file, there still wasn't a signed informed consent form. That's a pretty good presumption that there was no signed informed consent. And totally alters the way that this case can be decided by the trier fact. Because we didn't get that presumption. How is her testimony any different than the form she filled out, which was discussed by Dr. Verde, that shows she didn't mark that box? She didn't mark the box that the form was present before or after surgery. So what is she going to add? You just didn't call her or depose her because you were afraid of the explanation she would give. And that doesn't necessarily make her unavailable. Oh, I disagree. I don't have to call a witness of the defendant who was expected to give me adverse testimony. Who is expected to say I followed my custom and practice and I can't explain why in this situation. How do you know she was expected to say that? Because we deposed Susan Eger. Judge, we placed in the record Ms. Eger's deposition testimony where it said, Susan Eger said, I don't do this now. This is Valtryek Kaur's job. And Valtryek Kaur, if she didn't have it, would have told me that. And this surgery wouldn't have gone forward. And by virtue of the fact that she never told me and that she believed that the document was there at the time of the surgery, I don't have any doubt that it was there. That's her testimony in the deposition. So I'm now supposed to, based on the deposition of Ms. Eger, expect to call Ms. Kaur? You did a motion to eliminate to prohibit any inference that the form was there. There was a motion to eliminate allowed, I believe. That's true. But that doesn't get them around the missing... So they didn't offer any evidence that the form was there. You tendered the exhibit that showed it wasn't marked as being there. Well, that's not... That was introduced... You're confusing forms at this point. The informed consent form is the document signed by the patient. I'm talking about the office checklist form. Right. The informed consent form was not in the file just before and just after surgery, according to the office checklist form that Kaur... Well, that's the interoperative checklist form completed by Ms. Kaur. Counsel, that's two minutes. Okay. It was reversible error because it allowed the defendants to argue, unrebutted by the 501 instruction, that they followed their custom and practice by the Verdi Eye Clinic, that people did not get into the surgery room without having first signed an informed consent form. Susan never heard from the technician after the surgery that there wasn't one, so therefore we must have followed our custom and practice. That was Mr. Trimrud's argument in the record. And the 501 instruction would have completely rebutted that in this situation because we could have shown that in this situation, which is key to this case, a lack of informed consent that Dr. Verdi's office didn't follow the custom and practice that they claimed that they always followed in this situation. Namely, that Valpreet Kaur, if called by, you can assume their failure to call a witness who's in charge of obtaining the informed consent, that it never happened here and that she informed Dr. Verdi and Susan Eaker that it never happened here and that therefore we went forward with a surgery that breached the standard of care applicable to a reasonable ophthalmologist, as Dr. Verdi admitted. Well, they had two witnesses who talked about the informed consent, one saying she saw it being signed, I mean, she was present when it was signed in front of her and you got the doctor talking about his habit. Correct. Habit evidence, right? Well, he's saying custom and practice. But it's an individual habit evidence, isn't it? Well, I, you know, Judge, again, that's another issue that I've raised is the fact that For an organization, it's custom usage for an individual's habit, but he testified with regard to the habit. That comes in all the time, doesn't habit evidence. Not if he doesn't remember it. I mean, if he doesn't remember it to a specific patient, he must render Isn't that what a habit, you don't remember the specific occasion, but it's your practice and your habit to do this. That's the only time habit evidence comes in is when there's no specific recollection. But this is a medical malpractice case, Your Honors, where you must disclose what your opinions are. And I followed my custom and practice. That would be an opinion under 213F. It's a statement of fact, wouldn't it? No, because in an informed consent case, you have to say not just boilerplate. Informed consent, all things don't need all people. If I had a serious condition that normally with an appendicitis, you know, you're saying these are your risks. But because I had high blood pressure or something else that the doctor knew, there were additional risks that had to be disclosed. If you went forward with the procedure, just giving the normal informed consent isn't enough. So if he's saying under my custom and practice, this is the things I do for this type of patient with these type of measurements, that has to be disclosed under 213F. And he didn't do that in this case. Well, didn't they disclose they were going through their normal custom of disclosing things? There was going to be testimony with regard, that was disclosed to you. Well, there was testimony as from I'm sorry about the disclosure. Wasn't there a disclosure to you that they were going to testify with regard to their custom and practice with regard to making disclosures to the patient? Well, they testified that these are our practices regarding, or they disclosed to me this is the practice and procedure we use to get an informed consent form from the patients in this procedure. And then Ms. Eager testified in her deposition about that custom and practice. But at trial, Dr. Verde was allowed, over my 213 objection, to say what he says to all patients with these type of keratonomy measurements, etc., regarding the informed consent issues, which he never disclosed in an opinion or disclosure prior to trial. Well, the disclosure that was made wasn't about a specific, was they said their group was going to, there was going to be testimony about that office's practice. Agreed. And that, so yeah, I got two people talking about that. Well, right, about how you physically go through the process of getting the informed consent form from the patient. I mean, you have, I get Eager. Eager, yeah. Eager, you have Eager doing it and you have the doctor doing it. Correct. Okay.  Oh, no, it's defined under the Supreme Court case of Simmons. It's defined under the case of Siborowski. We don't have to subpoena them. The Siborowski case says that. Well, availability for purposes of the missing witness instruction doesn't mean just available to testify. They talk in terms of the case law being favorable to one side or the other. Well, Judge, Justice. And maybe I'm just being dense and you're used to, right, you're conditioned to. Justice Wright, do you think I would call Alpreet Kaur, who Susan Eager has just told me has confirmed through the deposition process that she checked and that there was no missing informed consent form at the time of surgery and that she told her that it was there and that the surgery went forward because the informed consent form was there? I didn't have that understanding of Eager's testimony. I focused more on Verdi's testimony, who says it's her job to inspect the form and mark the box if the form was there. Yeah, Dr. Verdi. So when Kaur testifies consistent with that, she's going to help you. She's going to say, I didn't mark the box, and that means when I checked the file before and after, the form wasn't there. How is that not favorable to you? Well, it's favorable to me because that's what I want is the inference. But the fact is, is that they have tendered a witness through the deposition of Ms. Eager that says everything was done according to custom and practice of the office, and that I'm supposed to in turn go get adverse testimony to me in deposition? That's not the law. And more importantly, Dr. Verdi in his deposition thought it was Susan Eager who was responsible for this process all the way through, and Ms. Eager corrected Dr. Verdi. So Dr. Verdi doesn't even have the foundational knowledge in his own office of who's responsible for what at that stage. Thank you. May it please the court? First of all, I want to apologize to this court for being late. I have no explanation other than an unexpected event. Well, I do, maybe. Let me be brief. First, I want to clear up a misconception. Mr. Fiewiger's briefs and his argument today suggests that the informed consent form is the dispositive bit of evidence in this case, which is not true. As you can see from the jury instruction and the law in this case, there's no mention of an informed consent form. It is some evidence of whether there's informed consent, but there's much more to it than that. The question is, was the plaintiff informed of the risks and benefits? And that's a fact question. And Mr. Nordstrom, if you read the cross-examination, denied and was a little equivocal, but Ms. She said, I saw him sign that form. Whether it's true or not, I don't know. Dr. Verde checked off a lot of boxes that all had to do with the specific risks of this. Mr. Nordstrom ultimately admitted his wife had had the surgery. He saw a video. He did some research. He got a pamphlet of information from the Verde Eye Clinic that he said, well, I read some of it, not all of it. You know, there's only so much a physician can do. And I believe that, you know, in retrospect and in collaboration, he got informed consent. Whether the informed consent form was in the file or not, it's not irrelevant. It's evidence that Mr. Fiedliger could and did argue. And I agree. We had no explanation for why that form wasn't in the file. We saw him sign it. An employee saw him sign it. I think that is the dispositive evidence. Whether Balpreet Kaur had testified or not wouldn't have changed anything. The dispositive evidence as to the informed consent form was Susan Eaker. She saw him sign. Now, there's circumstantial evidence that he looked at his file. I'm not going to comment on that because, again, that's a jury determination. It's a fact question. So, you know, did he have informed consent based on the global information available to him? I believe the jury decided he did. He had plenty of information. Whether there's an informed consent form in the file, totally fair argument, but not dispositive. The notes on use for the missing witness instruction do say what Mr. Fiedliger said, but it also says the decision to give that instruction is in the sound discretion of the trial court and is not to be reversed without a finding of an abuse of discretion. And that goes back to what I've just told this court. There was a fact question that the jury was entitled to make the determination if that is their job. As to the cumulative nature of the evidence, you know, the defense is in a tough spot on cases like this because the plaintiff can put on their evidence, they can take their time, and then the defense puts on their case. And the defense has to try. If there's one thing I've learned over my years of trying cases, it's that juries don't like repetition. They don't want to hear the same thing over and over and over again. And so they heard the evidence, including adverse testimony from Dr. Verde, direct evidence from Dr. Verde, evidence from Susan Eaker. You know, I thought about calling Balpreet Kaur. I didn't know that Mr. Fieber was going to tender this instruction because he didn't do it until the morning after the evidence was closed. Then he brought it up. And I find this interesting. He said, and he said it in his brief, he said it many times, it was a tactical decision. Well, you know, if you look at any discovery rule decision, they all say the idea of discovery rules is to eliminate surprise, to stop us from doing, you know, trial by ambush. Well, here's the deal. Had I called Ms. Kaur, Mr. Fieber would have said, oh, not disclosed in 213, which we did knowingly because we never intended to call her. So had we called her, he would have blocked her. We didn't call her. Now we're here on appeal because he says, well, you didn't call her. I get this instruction. And he intended, he was clearly not going to call her so he could get this instruction. Well, isn't that gamesmanship? Isn't that trial by ambush? But when the evidence is cumulative, regardless of whether that's a trial tactic or not, Mr. Fieber here also should have calculated that to get that instruction, you shouldn't have any other cumulative evidence of what that witness would testify to. So, you know, tactics are permissible, but the judge's discretion maybe would not have been abused if there was cumulative evidence already in the record. That's what she testified to. And Eker and Verdi both said Kaur didn't mark the box. Right. Office checkbook's form doesn't show written consent was there. That's cumulative of what she would have. And from opening statement until closing argument, we always acknowledge that for reasons we can't explain, and this was an argument that Mr. Fieber made over and over and he was entitled to, for reasons we can't explain, the informed consent form was missing. And so to suggest we didn't have an explanation is true, but it's because there is no explanation. We searched and tried, and, in fact, I was going to call the office manager, and Mr. Fieber objected. So I didn't call him because the office manager would have testified that he and I believe it was Susan did a. All right. Skip that. Let's just say that the evidence about the informed consent issue, which is beyond the informed consent form, is pretty clear. At least it was to me. The jury, and again, we don't know what the jury thought, but I believe they came to the conclusion that this plaintiff had sufficient information about the informed consent to undergo the surgery. Had he not, he could have said no. Again, Mr. Fieber said that the plaintiff denies ever seeing the informed consent form. That's a contested issue. That's a jury question. That's not a question of law. Did you inform the other side that Dr. Verdi was going to testify with regard to their habit of dealing with it? Oh, yes. I wanted to talk about the custom and practice. Yes, we did. And he talked about it in his deposition. There was no secret about this. There was no hiding that issue. And frankly, I've defended a lot of medical practitioners over the years, and I don't know how. Doctors don't remember patients from two years before. It's simply impossible for them to say, oh, yeah, I remember that guy. Here's what I said to him. It is customary, it is common for doctors to say, look, I don't remember it, but here's what I do. Here's my custom and practice. That's what Dr. Verdi did. And it's interesting that Mr. Fieber once wanted his experts to talk about what they would or would not do. Independent experts, not retained experts. What they would or would not do under the same circumstances, which is frankly, in my mind, the same thing as custom and practice. Yet he objects to Dr. Verdi giving him the most honest answer he can, which is here's what we typically do. I don't know what else he didn't do. He didn't make anything up. He could have been cross-examined as much as Mr. Fieber wanted to cross-examine him, but the evidence was clear. I don't remember him, I don't remember what I said, but here's what we do. Now, Susan Eaker remembered him because if you look at the record, this was a very anxious client. He sent gifts to her, and this was a negative thing, but it was uncommon. So there's a reason why she would remember this particular patient. And she did, and she testified. And again, where that informed consent form went, I still to this day cannot give this court an answer. I would also point out that the request from the jury that Mr. Fieber wants to suggest gave him the right to offer the missing evidence instruction came during jury deliberations. It wasn't offered during the jury instruction conference. And what the jury asked for, because they knew we didn't have the signed consent form, they wanted a blank consent form. But in his opening statement, Mr. Fieber referred to the blank form. It was nothing we hid, and none of the evidence in this case was something that we hid from the plaintiff or the plaintiff's attorney. It was all out there for him to see. As to Balpreet Kaur, yes, we didn't disclose her as a witness because, frankly, I didn't think she was going to be helpful. Even though she was, as Mr. Fieber says, perhaps a key person, I thought Susan Eaker was the most important person as to the informed consent issue because she saw him sign the form. And that gave Mr. Fieber every opportunity to cross-examine her and to suggest whatever he wanted to suggest about the fact that it was missing. And again, as to the missing witness instruction, again, had I known, I would have called her. Had I called her, he would have objected. Counsel, that's two minutes. Well, there was a motion to eliminate prohibiting you from calling any witness that hadn't been disclosed in discovery. That's exactly right, Your Honor, and that's why I didn't do it. And I didn't intend to, and that's why had I known he was going to make this objection, I would have petitioned the court to give me some leeway on that. Didn't know until all the proofs were closed.  But I still believe that if you look at the cases carefully, and I know you will, it's a cumulative issue. There's nothing that Alfred Tower was going to say that would change the informed consent issue. Not the informed consent form issue. We gave that up from the opening statement. But the informed consent issue, whether he had informed consent, he being the plaintiff, I think the jury decided he did. Are there any questions, Your Honors? Thank you. Thank you very much. And again, I apologize for being late. We always, as trial lawyers, try to do, try the best case we can for our clients. And it's not my job to disclose witnesses that prove the defense case. And I have, as a trial lawyer for 23 years, and tried over 30 jury trials. Never had an attorney, prior to the close of the case, tender to me a missing witness instruction. To do that, quite frankly, is malpractice by legal counsel. Because it is a surprise on the other side that they didn't disclose a witness that's material to their case. And it is a surprise to them when they find out that the person who is solely in charge of control of the most important document signed by the patient in this case, has failed to be disclosed as a witness, and has failed to be tenured by the defense in that case. The standard is, in the Simmons case, a witness is not equally available to a party if there is a likelihood that the witness would be biased against him. As, for example, an employee of the other party. Balpreet Kaur, as an employee of the other party, who was in charge of getting the signed informed consent forms, and in charge of showing Dr. Verdi's records, in doctor records, that was done before the surgery. In the patient's file. Ms. Eker was in charge of getting the signed consent form. Kaur was charged with managing those forms to make sure they were the file. Correct. But, Your Honor, that's why it's important in this case that I could argue to the jury in closing that you do not believe Ms. Eker because she told you under oath that this surgery wouldn't go forward without it being present in the file. But if I was able to give the missing witness instruction with Ms. Kaur, Ms. Kaur, I could have argued in front of the jury, Ms. Kaur would have testified in this case that I never saw it, that I told Ms. Eker I never saw it, that despite the fact that I never saw an informed consent form, Ms. Eker didn't stop me from going forward with this surgery. I told Dr. Verdi there's no signed informed consent form by Mr. Nordstrom. And Dr. Verdi admitted in this case that it is a breach of the standard of care for him as a reasonable ophthalmologist to go forward with this surgery without having obtained an informed, signed informed consent form. That's why this is material in this case. If you look at the judge's decision as to why it wasn't given, it was solely based on the decision of unavailability of the witness. It wasn't based on any other factor. If she's called, isn't the most harmful issue, wouldn't she testify, well, it wasn't in the file? No, if she was called, I don't, you've got to read these cases, Your Honor, because what they say is I, as the attorney tendering this, can, based on what has happened in the pretrial discovery, can anticipate that if she were called, she would give favorable testimony to the adverse party, namely that the informed consent form was present when she took Dan Nordstrom in there, that I informed Dr. Verdi that the informed consent form was there, despite the fact I didn't check it on the interoperative reports, and that once I reconciled the file, the informed consent form was there. Those were all given, basically, to me in the discovery deposition of Susan Eaker. So there's no reason for me then, as adverse counsel, to go back and try to verify those facts. But when the defense doesn't present the witness who can verify the chain of evidence in this case, that's error to disallow the 501 instruction for the missing witness. Well, why don't you tell me again what you think you could have, if that instruction was given, what did you think you could argue to the jury? I could argue that when Ms. Eaker tendered Mr. Nordstrom to her to turn her over for surgery, there was no signed informed consent form present. I could have argued that Ms. Herr told her that fact. I could have argued that she told Dr. Verdi that fact. How do you get that from the missing jury instruction? The missing witness instruction? The missing witness instruction, that you could say that she would have told the doctor, she would have told the... Because they said that Ms. Eaker testified that if it wasn't present, Ball Peak Corps would have told me that, and then this wouldn't have gone forward. And so that inference is that no, she told you that it wasn't forward, and yet this surgery happened without a signed informed consent form. Did Eaker say in her deposition testimony that Kurt told her the form wasn't there and surgery shouldn't go forward? No, she told her the exact opposite. She told her that when we checked for it, she recalled the form being there, but she can't tell us why it's not there now. As to the custom and practice again, I mean, Dr. Verdi was allowed to give opinions that Mr. Nordstrom was a good candidate. I attempted to elicit from Dr. Finney, Dr. Dury, and my own plaintiff's expert that given the preoperative measurements of this patient, that he was at an increased risk and was a poor candidate for a successful LASIK proceeding. But that wasn't the theory of your case that he should have never operated on this guy? No, it's a lack of informed consent, Your Honor. If you're a patient with these type of preoperative measurements, you don't get the boilerplate. You get to be told specifically, and my expert said, informed consent is a two-part test. Number one, you take what the patient is and say, hey, this patient has some serious risks with respect going forward that the general population with LASIK doesn't have. And then you also still have to obtain the signed informed consent. Well, your expert could still testify to all that without saying that I wouldn't have operated on the guy or I think he's at more risk for the surgery to begin with. He could have said in light of his conditions, this is the information that he should have been provided by the physicians to meet the standard of care. So why does Dr. Verde get to testify uncontroverted that based on the preoperative measurements in this case, he was a good candidate for the LASIK surgery? I mean, that's very troubling to allow the defense to put into their case that he was a good candidate and not be rebutted by three professional experts who feel that based on his preoperative measurements, he was a poor candidate for LASIK. It goes again, Your Honor, to the lack of informed consent of this patient. The patient is being told you're a good candidate and here are some of the risks, but not the specific risks to this patient because of the severe farsightedness that he has. And that's why the judge disallowed us doing it. It was unfair to the plaintiff on the issue of lack of informed consent. Thank you. The court will stand adjourned for the day and we'll...